[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Count 42 of the plaintiff's Complaint Revision "I" alleges that the defendant United Technologies Corporation, (UTC), violated General Statutes § 31-71e. General Statutes § 31-71e states:
 Withholding of part of wages. No employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law, or (2) the employer has written authorization from the employee for deductions on a form approved by the commissioner, or (3) the deductions are authorized by the employee, in writing, for medical, surgical or hospital care or service, without financial benefit to the employer and recorded in the employer's wage record book.
Since this Count sets forth a statutory cause of action, it has been severed from the remainder of the complaint, CT Page 6115 which will be tried before a jury. Therefore, this memorandum of decision will address only Count 42.
The Court has found the following necessary facts. The Plaintiff, Roger Emerick has commenced this action against Defendant UTC for the illegal withholding of his wages in violation of General Statutes § 31-71e. The Plaintiff was employed by UTC at the Hamilton Standard Division until he was laid-off on January 19, 1994. The Plaintiff's base salary from January 1993 through the end of April 1993 was $2,010.00 semimonthly. On April 16, 1993, October 22, 1993 and on September 22, 1993, UTC published a general notice to its employees (Exhibits 27, 29) informing them that UTC would be implementing a furlough day program. The furlough program consisted of nine furlough days in 1993 (between May 28, 1993 and November 24, 1993), and five furlough days in 1994 (between January 17, 1994 and November 11, 1994). The furlough program affected all UTC employees, including non-exempt (hourly) and exempt (salaried) employees. The Plaintiff was an exempt/salaried employee with a labor grade of 46. The furlough program resulted in the reduction of the base salaries of all employees. In essence, for 1993 the base salaries of employees were reduced in an amount roughly equal to nine days pay; however, the reduction was spread evenly over the remaining sixteen pay periods. From May 1993 through the end of the year, the plaintiff's base salary was $1,905.63.[1] Once the reduced salary became effective, it remained constant through the end of 1993 and was the basis for determining the Plaintiff's state and federal taxation. In 1994, UTC continued its furlough program and the Plaintiff's salary was reduced correspondingly.[2]
The Plaintiff alleges the following cause of action: that his wages were improperly withheld when the Defendant instituted a furlough day program. The Plaintiff alleges that neither his wages nor the wages of any other exempt employee at Hamilton Standard were reduced. Rather, the Plaintiff alleges that these wages were illegally withheld. Second, the Plaintiff alleges that as a salaried employee he is entitled to his full salary regardless of the number of hours worked (i.e., if the salary is based on an average work week of 40 hours, his pay should neither increase nor decrease if he works more or less than the 40 hours). Finally, the Plaintiff alleges that UTC's withholding violated both state and federal law and UTC's participation in the Connecticut Department of Labor's Shared Work Unemployment Compensation Pilot Program, (Shared Work Pilot CT Page 6116 Program) did not legalize the withholdings.
The Defendant argues that General Statutes § 31-71e
was not violated because UTC was authorized to reduce the Plaintiff's pay by virtue of UTC's participation in the Shared Work Pilot Program. Further, Defendant argues that since it was made clear to all employees that no work was required on the furlough day, Plaintiff was not due any wages if he chose to work on a furlough day. Thus, the pay reduced was not "wages" as defined in General Statutes § 31-71e.
The issue presented to this Court is whether the payment of less than the full salary to an at-will salaried employee, as a result of the Defendant employer's participation in the Shared Work Pilot Program, constituted the "withholding" or "diversion" of a portion of the employee's pay in violation of General Statutes § 31-71e. This memorandum of decision resolves the central issue on two independent grounds: (1) facial application of General Statutes § 31-71e; and 2) case law and by defining the terms contained in General Statutes § 31-71e. For the following reasons, this court finds the Defendant has not violated General Statutes § 31-71e.
 I.
1. Facial Application of General Statutes § 31-71e
General Statutes § 31-71e states in part: "Withholding of part of wages. No employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law. . . ." (Emphasis added.).
The Plaintiff argues that he is entitled to his full salary, regardless of whether the employer instituted a furlough day during the particular pay period, and any wages withheld by the employer violated General Statutes § 31-71e. The Plaintiff relies on his status as a salaried employee for this proposition, although he cites no authority other then 29 C.F.R. § 541.118 (a) and 29 U.S.C. § 201, et seq. (Fair Labor Standards Act).
The Defendant counters that it did not violate the statute because the pay reduction was the result of its participation in the Shared Work Pilot Program, which permitted CT Page 6117 the reduction of the furloughed employees' pay. In the alternative, the Defendant maintains that the Plaintiff was not required to render services on the furlough days, therefore any lost pay did not constitute wages. The Court finds that the Plaintiff's claims are purely state based and 29 C.F.R. § 541.118 (a) and 29 U.S.C. § 201
are not implicated, nor are they relevant to the violation of this state statute and the facts of this case.
General Statutes § 31-71e, on its face, permits an employer to withhold wages when empowered by state or federal law. Thus, it must be determined whether the Defendant's participation in the Shared Work Pilot Program through its furlough program empowered it to withhold the Plaintiff's wages.
The Defendant has presented evidence that it participated in the Shared Work Pilot Program by way of the deposition of Scott Esposito (Exhibit 68) and through Exhibits 27 and 29. The Shared Work Pilot Program permits an employer to implement a work hour reduction (furlough) for all of its employees or a designated group, in lieu of laying off an equivalent percentage of employees. Prior to implementing the Shared Work Pilot Program, the Defendant was required to comply with General Statutes § 31-71f. This statute requires an employer to: "[M]ake available to his employees, either in writing or through aposted notice maintained in a place accessible to his employees, any employment practices and policies or change therein with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters."[3] (Emphasis added.).
Exhibits 27 and 29 are general notices to all UTC employees regarding the furlough program and its effect on their pay. The court finds that Exhibits 27 and 29 comply with the statutory requirements of General Statutes § 31-71f because Exhibit 27[4] consists of two general notices, each general notice is one page in length and both are from James McMahon, Vice-President- Human Resources of UTC. The first page of Exhibit 27 refers to the furlough schedule for 1994 and is dated October 22, 1993. The second page of Exhibit 27 refers to the furlough schedule for 1993. The second page is the pertinent page and it is dated April 16, 1993. This notice states that the Defendant UTC has scheduled nine furlough days beginning May 28, 1993 through November 24, 1993. As a result, "Exempt employees ([labor] grades 41 and up) will have their pay reduced by the equivalent of nine days for the remainder of the CT Page 6118 year, effective May 1." At this time, the Plaintiff was classified as an exempt employee, and, as such, he was notified that his salary would be reduced.
Exhibit 29 is a general notice from Dennis Seekins, the Manager of Disbursements. The notice is dated May 16, 1993 and is directed to all Hamilton Standard Associates. This notice specifically refers to the former notice of April 16, 1993, supra. This notice clarified how the salary reduction would be calculated. It stated: "EXEMPT EMPLOYEES (labor 41 and up): (1) An equivalent's day pay based on your base salary as of May 1, 1993, will be calculated. This amount will be multiplied by the 9 furlough days and then deducted evenly from the remaining 16 pay periods in 1993, starting with the May 15, 1993 paycheck. (2) ATTENDANCE CARDS are not required for the furlough day."
The Plaintiff has testified that his base salary was not "reduced" as a result of the furlough program, and he has attempted to have other witnesses testify their salaries were not reduced. The Plaintiff testified that as a salaried employee he had no daily wage rate. This evidence was contradicted by Dennis Seekins who testified that a daily wage rate could be calculated for salaried employees for special purposes. For instance, Seekins testified that the daily wage rate would be used if a salaried employee received authorization to work overtime during a pay period, a daily wage rate would be used to calculate the overtime pay. The Plaintiff alleges that he lost $1,669.85 in withheld wages for 1993 and $927.69 for 1994, for a total of $1,747.22.[5] Further, the Plaintiff is claiming interest and punitive damages under General Statutes § 31-72. General Statutes § 31-72 permits an employee to recover "in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court."
This Court finds that the Plaintiff's conclusion that the Defendant's action constituted a withholding, and not a reduction, is in error. Additionally, the existence of a daily wage rate is not central to the analysis of this issue, and neither is the testimony of other UTC employees that they considered their loss of wages to be an illegal withholding of wages instead of a reduction of base salary. The court concludes that the Defendant's furlough program complied with the requirements of General Statutes § 31-71f and the Shared Work CT Page 6119 Pilot Program. As such, the Defendant was empowered by state law to reduce the Plaintiff's salary to coincide with the furloughs without violating General Statutes § 31-71e or General Statutes § 31-72.
 II.
2. Definitional analysis and case law analysis of General Statutes § 31-71e
In order to determine if the statute was violated, an analysis of the key words in the statute and the relevant case law is necessary. Doe v. Manson, 183 Conn. 183, 186,438 A.2d 859 (1981). Black's Law Dictionary, 6th ed. 1990, defines "Furlough" as: "[A]n employee placed in a temporary statuswithout duties and pay because of a lack of work or funds." (Emphasis added.). General Statutes § 31-71a(3) defines "Wages" as: "`Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . ." Black's Law Dictionary defines "Wages"[6] as "a compensation given to a hired person for his or her services . . . based on time worked or output of production." (Emphasis added.). Black's Law Dictionary, 6th ed. 1990, defines "Salary" as:
 A reward or recompense for services performed. . . . A stated compensation paid periodically as by the year, month, or other fixed period, in contrast to wages which are normally based on an hourly rate.
Black's Law Dictionary, 6th ed. 1990, defines "Withhold" as:
 To retain in one's possession that which belongs to or is claimed or sought by another. . . . To refrain from paying that which is due.
Black's Law Dictionary, 6th ed. 1990, defines "Withholding" as:
 Deductions from salaries or wages, usually for income taxes and social security contributions, to be remitted by the employer, in the employee's name, to the taxing authority.
The Court determines that, applying the foregoing CT Page 6120 definitions to this case, the amount of money that the Plaintiff alleges was withheld from his pay does not qualify as wages because the Plaintiff was not required (nor expected), to render services on the furlough days. The very definition of furlough states the employee is without duties and pay. Further, the Defendant did not illegally withhold a portion of the Plaintiff's wages because the general definitions of withhold and withholding preclude their application in this case. In order to withhold the Plaintiff's wages, the wages must have been due to the employee at the time the wages were withheld. Finally, the Plaintiff's base salary was reduced, not his semimonthly wages. Thus, since the pay was reduced pursuant to a state program, and since the Plaintiff was not required to render services on the furlough day, no wages were due the Plaintiff and the Defendant did not illegally withhold the Plaintiff's wages.
In Wagmeister v. Condor Air-Sea Transport, Superior Court, judicial district of New Haven at New Haven, Docket No. 322993 (15 C.L.R. 290, October 20, 1995, Hodgson, J.), Judge Hodgson determined whether vacation pay was wages under General Statutes § 31-76a(3). After the trial, Judge Hodgson stated in her memorandum of decision:
 The legislature has not included vacation pay in the definition of wages. In § 31-6k it specifically distinguished vacation pay from wages by terming it a `fringe benefit'. By enacting P.A. 90-55, the General Assembly made it clear that nonpayment of vacation pay was actionable pursuant to § 31-72 only if the requirements of § 31-76k
were met.
Judge Hodgson concluded by refusing to broaden the definition of wages in General Statutes § 31-71a(3), as applied by C.G.S. § 31-72, to include vacation pay.
Applying Judge Hodgson's rationale to the facts of this case, the same result should occur. In this case, the Plaintiff alleges that he earned compensation during the furloughs whether he worked or not, and the failure to be paid for the furlough day is a violation of C.G.S. § 31-71e. InWagmeister, vacation pay was not considered wages because the employee did not work for the vacation pay as the compensation, CT Page 6121 but derived the vacation pay as a fringe benefit.[7] In the instant case, the Plaintiff did not earn any pay during the furlough; thus, the missing pay is not wages under the statute.
The Court finds that the Defendant's implementation of the furlough program was an attempt to prevent future layoffs of its employees. As a result of the furloughs the Plaintiff's base salary was reduced effective May 1, 1993. The fact that the Defendant carried the Plaintiff's former base salary on the Plaintiff's check stub is immaterial. Plaintiff was aware his base salary was reduced and that the impact would be spread equally over the remaining pay periods. The Plaintiff's base salary was reduced, not withheld.
Therefore, it is decided that there are two reasons that the Plaintiff's alleged General Statutes § 31-71e cause of action should fail and judgment enter in favor of the Defendant. First, based on a facial reading of General Statutes §31-71e, the Defendant was empowered by state law to withhold the Plaintiff's wages. Second, in defining the terms contained in the statute and by analogy to the case law, the Court finds the Plaintiff was not entitled to compensation for the furloughs, thus any money withheld were not wages as the term is used in the statute.
Judgment shall enter for the Defendant on Count 42.